United States District Court
Northern District of California

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

EVAN PIMENTAL,

        Defendant.

Case No.: CR-14-70118-MAG (KAW)

DETENTION ORDER

## I. BACKGROUND INFORMATION

Defendant Evan Pimental is charged in a criminal complaint for being in receipt or possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d).

Pretrial Services prepared a full bail study. On February 7, 2014, the Court conducted a detention hearing. Defendant was present, in custody, and represented by Assistant Federal Public Defender Edward Smock. Assistant United States Attorney Brigid Martin appeared on behalf of the government. For the reasons stated below, the court orders that Defendant be detained.

## II. LEGAL ANALYSIS

The Bail Reform Act requires that in a pretrial posture, the government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be mitigated through the imposition of conditions of release. If the government does not meet its burden, the court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or danger to the community. Close cases should result in release: "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to

rule against detention in close cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (Walker, J.) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

A person facing trial generally shall be released if some "condition, or combination of conditions . . . [can] reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c). In non-capital cases, pretrial release should be denied "[o]nly in rare circumstances." *Motamedi,* 767 F.2d at 1405; *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"). Bail hearings generally proceed by proffer, and the rules of evidence do not apply. 18 U.S.C. § 3142(f). At the hearing, the court determines whether any conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of the community or another person. *Id.* The Bail Reform Act "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." *Motamedi*, 767 F.2d at 1405.

In evaluating whether pretrial release is appropriate, a court must consider (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at 1407.

**A. The Nature and Circumstances of the Offense and Weight of the Evidence**

1. Nature and Circumstances of the Offense

Defendant is charged with being in receipt or possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). According to Special Agent Andrew D. Williams of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), on January 24, 2014, police officers from the Pleasanton and Hayward police departments executed a state search warrant at Defendant's

residence in Hayward. At about 2:00 a.m. the Hayward Police Department was conducting surveillance at Defendant's address. When they noticed him leave in a tan Buick, they stopped and detained him. Pleasanton police officer Lewellyn entered Defendant's residence and encountered his mother Ariel Levy sitting on the living room floor.

During the search of the one bedroom apartment, various calibers of live ammunition, a shotgun, a fully automatic Maadi MISR AK-47 type machinegun, a fully automatic Velocity VMAC 9 machinegun, and various machinegun parts were found. The machineguns were concealed behind a false wall that was manufactured inside a closet of the apartment. Ms. Levy told officers that did not know the firearms were in the apartment. Later, Defendant told agents that he lived in the apartment with his mother.

Also recovered during the search were receipts/invoices in the name of "Michael Pimental" for the purchase of AK-47 parts and accessories, which could be used on a Maadi MISR AK-47 type machinegun, at Defendant's residence. Pursuant to the search, the officers also recovered Defendant's cell phone and downloaded the data contained in it. The data showed that on January 10, 2014, Defendant had sent an outgoing text message referencing his possession of a "full auto ak."

At the hearing, the attorney for the government presented additional information regarding the Defendant and the search of his residence. Specifically, the government proffered that Defendant has ties to Reno, Nevada and Fresno, California and that additional weapons were found in the defendant's apartment – one of which was a shotgun that he was holding for his friend from Fresno. Gun parts, tools and accessories were found in the apartment along with a bayonet and a camouflage backpack containing 100 rounds of machinegun ammunition and 9 millimeter ammunition. In addition, Defendant told officers that he had more guns stored at his father's house.

The government also presented printouts from posts made from Defendant's Google+ account in which he posts his telephone number for people to call him if they have "sealed activis bricks" for sale. He also appears to be bragging about selling drugs out of the Budget Inn in San Leandro. In one post, he says he shot someone and in another one. In another, he was kicking

DETENTION ORDER
CR-14-70118-MAG (KAW) 3

himself for not buying a round drum for AK-47 ammunition that appears, from the photo, to hold a large number of bullets at the last gun show. In a third post where there is an image of a shotgun, another firearm, Sandy Hook School and other memorials, Defendant discusses what he calls "over-the-top gun laws" designed to reduce crime only being applicable to law abiding citizens. He also stated that the 2nd Amendment is a law that makes this country great and that it is not acceptable for the government to be in possession of all of the firearms. He then concluded that the laws being passed make him question the motives of the government and whether there is any freedom left.

These opinions in and of themselves are not dangerous. Defendant has a right to his opinion, and he shares the opinions that many Americans hold in this country. But when those posts are viewed in the context of his drug abuse and illegal collection of fully automatic machine guns, ammunition and sophisticated accessories, he starts to look like a young man who is planning to do something dangerous as opposed to a law abiding citizen who purchased and possessed firearms legally.

The nature and the circumstances of the offense are extremely dangerous as Defendant had accumulated enough firepower and ammunition to do serious harm to a great number of people. The court is particularly concerned that Defendant seems to have been sophisticated enough regarding whatever his plans may have been relative to the machineguns to have hidden them behind a false wall in his bedroom closet. The back pack full of ammunition and other supplies for the firearms also suggests that Defendant may have had violent plans, and the firearms recovered during the search were not registered to him. Thus, the nature and circumstances of the offense weigh heavily in favor of detention.

2. Weight of the evidence

As to the weight of the evidence, while this is the least important factor, Defendant was found with two fully automatic machine guns hidden behind a false wall in his bedroom closet, and he had a lot of live ammunition, tools and accessories for those machine guns with evidence that he received some of those things by mail. None of those machineguns are registered to Defendant.  Thus, the weight of the evidence weighs in favor of detention.

DETENTION ORDER
CR-14-70118-MAG (KAW)                             4

### B. The History and Characteristics of the Defendant and the Nature and Seriousness of the Danger to Any Person or the Community

Defendant is 23 years old and has lived off and on with him mother in the Hayward/San Leandro area and with his father in the Danville. However, he and his father had not spoken for three months before the arrest, and his father did not know where he was residing during that time. His mother is recently deceased and he has no siblings. Defendant has never been married and has no children. He has been unemployed for approximately one year. He attended high school in Reno, Nevada, but was a few credits short of graduating, and he obtained his GED one month after leaving high school.

Defendant has no history of mental illness, but his father stated that he has abused oxycontin and heroin since 2008 and spent a couple of months in a "sober house." Defendant's criminal history also began in 2008 when he was arrested as a juvenile for shoplifting and then for driving under the influence of alcohol/drugs in 2009. In 2010 was arrested for possession of a controlled substance and for being under the influence of a controlled substance. He was given diversion but failed to appear and a warrant was issued for his arrest on March 18, 2013 That case remains active, and he had a court date scheduled for February 10, 2014. He had a probation revocation in December 2011 for a drug related arrest. In 2012, he had two failures to appear in another case having to do with controlled substances and he was convicted of a misdemeanor in 2013 for possession of a controlled substance without a prescription. In January 2014, his probation was revoked. He also has a pending case in state court for driving with a suspended license. According to Pretrial Services, Defendant has used two aliases/variations of his own name and two social security numbers. He has 8 failures to appear and 4 failures to pay fines to DMV. Defendant was on probation at the time of his arrest for the instant offense. Heroin was found when the search warrant was executed at his apartment.

Defendant proposed his father as surety and third party custodian, but the Court found that he was not suitable to mitigate the risk of danger to the community given the circumstances of the offense discussed above and the fact that Defendant admitted that he has more guns stored at his father's residence.

Given, the nature and circumstances of the instant offense, Defendant's criminal history, including numerous failures to appear, and his history of drug abuse, Defendant's plan to live with his father in Modesto, where he has even more guns stored, or in the alternative, to live in a halfway house, is not sufficient to mitigate the risk of danger to the community. Therefore, the Court finds that there is no condition or combination of conditions that could be imposed to mitigate the risk of danger to the community.

### C. Risk of Nonappearance

Factors that indicate Defendant poses a risk of nonappearance include his unstable residential and employment history and current lack of employment. There were also discrepancies in the statements made by Defendant and his father regarding his background, and they have been recently estranged. Defendant has substance abuse issues as evidenced by his criminal history, his father's statements, and the information provided by the government regarding alleged possession of heroin at the time of his arrest. Defendant also has a record of probation violations and failures to appear. His passport is also missing, and it appears that he may have made false statements to the military or Pretrial Services regarding his military or criminal history.

Given the above, the court agrees with Pretrial Services that there is no condition or combination of conditions that could be imposed that would mitigate the risk of nonappearance.

## III. CONCLUSION

In light of Defendant's criminal history, the nature of the instant offense, and the weight of the evidence, the Court finds that Defendant presents a danger to the community and that there is no condition or combination of conditions that will reasonably assure his appearance or the safety of any other person or the community.

For the reasons set forth above, Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  Defendant shall be afforded reasonable opportunity for private consultation with counsel.  On order of a court of the United States or on request of an attorney for the government, the person in charge of the

1  corrections facility in which Defendant is confined shall deliver Defendant to a United States
2  marshal for the purpose of an appearance in connection with a court proceeding.
3      IT IS SO ORDERED.
4  DATED: February 14, 2014

                                            KANDIS A. WESTMORE
                                            United States Magistrate Judge

United States District Court
Northern District of California

DETENTION ORDER
CR-14-70118-MAG (KAW)                    7